# APPEALS DETERMINED

BY THE

# UNITED STATES BOARD OF TAX APPEALS

## APPEAL OF MATHER PAPER CO.

Docket No. 1378. Submitted April 30, 1925. Decided November 12, 1925.

> The taxpayer was one of a group of corporations which filed a consolidated return for the year 1920. Theretofore, Commissioner Williams had held the taxpayer to be affiliated with other corporations for the year 1919, and the conditions respecting affiliation were identical as to the year 1920. The taxpayer advanced the funds with which to pay its share of the tax, which amount was more than its pro rata share of the consolidated tax. The parent corporation thereafter became insolvent. Commissioner Blair, thereafter, determined correctly that the taxpayer was not affiliated with the parent corporation in the year 1920. *Held*, that the determination by Commissioner Blair was not an overruling of Commissioner Williams with respect to the year 1920. *Held, further*, that in the computation of the deficiency against the taxpayer, credit should be given for the pro rata portion of the tax paid by the parent corporation theretofore advanced by the taxpayer.

*Joseph M. Dohan, Esq.*, for the taxpayer.
*Percy S. Crewe, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the calendar year 1920 in the amount of $20,231.05.

### FINDINGS OF FACT.

The taxpayer is a Pennsylvania corporation organized in 1917 under the name of Shuttleworth, Hogg & Mather, Inc., and, after its incorporation, including the year in question, was engaged in business in Philadelphia as a wholesale and retail dealer in paper and paper bags.

Shuttleworth, Keiller & Co., hereinafter referred to as the Shuttleworth Co., was, during the taxable year in question, a New York corporation engaged in business in New York City as a wholesale and retail dealer in paper and paper bags and as a jobber distributing paper products to other dealers in the same business. That company, through its stockholders, controlled a majority of the stock of a number of other corporations, including the taxpayer,

1

engaged in the same line of business in various cities, operated the group of corporations substantially as one unit and, through the medium of said corporations, effected a large sale or distribution of its merchandise.

On the organization of the taxpayer, its stock, consisting of 1,400 shares, was subscribed to in the amount of 50.14 per cent by the Shuttleworth Co., and distributed among its stockholders. The remaining 49.86 per cent was acquired by H. J. Hogg, Charles W. Mather, James J. Gallen, and William S. Graham, in the amounts, respectively, of 279 shares each by Hogg and Mather, 100 shares by Gallen, and 40 shares by Graham. During the year 1920, Hogg sold 128 shares of his stock to the stockholders of the Shuttleworth. Co., increasing its percentage of control, some time during that year, to 59.28 per cent.

Under an agreement dated January 17, 1919, in order to assure uniformity of control by the Shuttleworth Co. and to prevent the sale of the stock of the associated companies, except with the knowledge and consent of the Shuttleworth Co., the stockholders of that company transferred to it, as trustee for the respective depositors, all of the shares in the associated companies, including Shuttleworth, Hogg & Mather, Inc., except 28 shares in the last-named company. This agreement, after reciting that, by virtue of the stock controlled by the Shuttleworth Co., all of the associated companies were managed and directed as to their policies and methods of operation to the advantage of the depositing stockholders and that the depositors desired to prevent division of their holdings and to assure a permanent policy in the management, provided that the Shuttleworth Co. should have the exclusive right to vote all the deposited shares and to control, in so far as that was possible through the control of the majority of the stock, all of the business activities of the said associated companies. This agreement remained in effect throughout the taxable year here in question. To the 674 shares of the taxpayer originally deposited under this agreement were added 80 shares of the 128 shares disposed of by Hogg in that year. The remaining 48 shares were held by stockholders of the Shuttleworth Co. without deposit. The 28 shares not originally deposited were owned and held by one Tompkins at the time of the execution of the agreement and, upon his death, were acquired by other stockholders, who deposited them under the terms of the agreement.

During the year 1920, four of the seven directors of the taxpayer were selected by the Shuttleworth Co., Mather, Hogg, and Gallen, comprising the other three directors. During that year Shuttleworth was president, Mather vice president, and Gallen and Graham, secretary and treasurer, respectively.

From and after its organization the taxpayer made total purchases on account of its business and purchases from the Shuttleworth Co. as set forth below:

| | Year | Total purchases | Purchases from Shuttleworth Co. |
|---|---|---|---|
| 3 months | 1917 | $40,924.37 | $25,125.08 |
| 12 months | 1918 | 632,141.91 | 299,360.18 |
| Do | 1919 | 691,042.57 | 249,342.41 |
| Do | 1920 | 957,539.94 | 315,731.65 |

In general, the method of doing business between the taxpayer and the Shuttleworth Co. was as follows: The Shuttleworth Co. acted as agent of the Union Paper Bag Co., purchased from them and sold to the taxpayer. In so far as requirements could be supplied by the Shuttleworth Co., the taxpayer made all purchases from that source, and fully advised the Shuttleworth Co. of any purchases made elsewhere.

Prior to the taxable year in question the taxpayer made separate and independent income and profits-tax returns to the collector of internal revenue at Philadelphia. On November 1, 1920, and after the Shuttleworth Co. had furnished to the Commissioner certain information in respect of its activities, the Commissioner sent to the Shuttleworth Co. a communication reading in full as follows:

TREASURY DEPARMENT,
*Washington, November 1, 1920.*

OFFICE OF COMMISSIONER OF INTERNAL REVENUE,
IT: SA: CR: Af.
MLS.
SHUTTLEWORTH KEILLER & CO.,
474 *West Broadway, New York, N. Y.*

SIRS: Reference is made to the Affiliated Corporations Questionnaire filed by you for each of the taxable years 1917, 1918 and 1919.

From the facts presented, you are informed that, for the taxable years 1917 and 1918, the companies listed below were affiliated within the purview of Articles 77 and 78 of Regulations 41, Treasury Decision 2662, and Section 240 of the Revenue Act of 1918. For the purpose of consolidation the companies should be divided into two groups. A consolidated excess profits tax return for 1917 and a consolidated income and profits tax return for 1918 should be filed for each group:

GROUP I.

Shuttleworth, Keiller and Co.    (Parent.)
W. E. Shuttleworth and Co.
Congress Warehouse and Forwarding Co.

GROUP II.

Gallen Paper Company.
Shuttleworth Hogg and Mather, Inc.

For the taxable year 1919 the companies listed below were affiliated within the provisions of Section 240 of the Revenue Act of 1918. Therefore, a consolidated income and profits tax return should be filed for these companies, if such action has not been taken:

Shuttleworth, Keiller and Co. (Parent.)

W. E. Shuttleworth and Co.

Congress Warehouse and Forwarding Co.

Gallen Paper Co.

Shuttleworth Holly Co.

Shuttleworth, Hogg and Mather, Inc.

Shuttleworth Dumouchel Co.

Shuttleworth Wollny Co., Inc.

George A. Fink Co.

The companies listed below were not affiliated within the purview of the law and regulations hereinbefore referred to and each company should, therefore, file a separate return for each of the taxable years indicated, where such action has not already been taken, and provided they were not affiliated with any other companies not herein considered:

Doscher-Tetamore Co., Inc., 1917, 1918 and 1919.

Shuttleworth Holly Co., 1917 and 1918.

Shuttleworth Dumouchel Co., 1917 and 1918.

Shuttleworth Wollny Co., Inc., 1918.

Kolb Carton Co., 1919.

Berlin Veneer Works, Inc., 1917, 1918 and 1919.

Wm. Spreen and Co., Inc., 1917, 1918 and 1919.

The consolidated excess profits tax returns for the taxable year 1917 should be forwarded direct to this office within thirty days from the date of this letter.

A copy of this letter should be attached to each return when filed.

In your reply, refer to IT: SA: CR: Af–MLS.

Respectfully,        (Signed)     G. V. NEWTON,
*Deputy Commissioner.*

During the year 1920 the stockholders and the respective percentages of stock held by them in the Shuttleworth Co. and the taxpayer were as follows:

| | January 1, 1920. | | December 31, 1920. | |
|---|---|---|---|---|
| | Shuttleworth Co. | Taxpayer. | Shuttleworth Co. | Taxpayer. |
| W. E. Shuttleworth | 39.6 | 20.0 | 0.4 | |
| E. G. Shuttleworth | | | 39.6 | 24.3 |
| Frank Keiller | 21.7 | 10.9 | .6 | .3 |
| Margaret Keiller | | | 6.6 | 4.9 |
| Russell Keiller | | | 8.5 | 4.5 |
| Florence Lee | | | 6.6 | 3.4 |
| C. H. Shuttleworth | 15.0 | 7.5 | 15.6 | 8.9 |
| C. H. Shuttleworth, Inc | | | .6 | .3 |
| J. L. Wolff | 13.3 | 6.7 | 13.3 | 7.9 |
| John Weidman | 1.6 | .8 | 2.0 | 1.8 |
| C. V. Shuttleworth | 1.5 | .7 | 1.5 | .7 |
| Clinton Cuttrell | 1.3 | .6 | 2.0 | 1.0 |
| R. H. Jackson | 1.3 | .6 | | |
| M. A. Paulsen | .7 | .3 | .7 | .3 |
| J. D. Tompkins | 4.0 | 2.0 | | |
| H. Beisler | | | 2.0 | 1.0 |
| Shuttleworth Keiller & Co. | | | | |
| H. J. Hogg | | 19.9 | | 10.9 |
| C. W. Mather | | 19.9 | | 19.9 |
| J. J. Gallen | | 7.1 | | 7.1 |
| W. S. Graham | | 3.0 | | 2.0 |
| | 100 | 100 | 100 | 100 |

For the taxable year 1920 the taxpayer filed a return on Form 1122, notifying the collector at Philadelphia of the filing of a consolidated return with the Shuttleworth Co. with the collector at New York, and the Shuttleworth Co. duly filed the consolidated return above mentioned. Form 1120, as issued by the Commissioner for the use of corporation taxpayers for the year 1920, instructed corporations required to file consolidated returns as follows:

That the parent company should file the consolidated return in the office of the collector at the place where its principal office was located and that the subsidiaries should file Form 1122 in the offices of the collectors of their respective districts.

That if the stock ownership was between 95 per cent and 50 per cent, the parent company must furnish the information called for in the return by questions 11 to 14, page 3.

That the department preferred that the total tax assessed against the affiliated companies be allocated to and paid by the parent company to the collector of its district.

The information return of subsidiary or affiliated corporation, Form 1122, contained the following instruction:

The department prefers that the entire tax shown on a consolidated return be paid by the parent or principal reporting corporation instead of being apportioned among the corporations composing the affiliated group.

The official Form No. 1120, filed for the year 1920 by the Shuttleworth Co. as its consolidated return (including taxpayer), directed the corporation to state whether it owned or controlled over 50 per cent of the stock of another corporation, and, if so, to state whether the corporation had filed an affiliated corporations questionnaire for 1917 or subsequent taxable years, and stated that, if such a questionnaire had been filed, a further questionnaire need not be filed; it further required the parent company to state whether substantially the same conditions as set forth in such prior questionnaire obtained during the taxable year 1920.

The Shuttleworth Co. answered all questions in the affirmative and filed no further questionnaires for the year 1920.

The Shuttleworth Co., prior to the filing of the consolidated return as above set forth, notified each of the companies proposed to be included therein that a consolidated return was required and requested each of them to send statements to it, together with their checks for the amount of tax shown to be due upon a separate computation of their tax liability. The Congress Warehouse & Forwarding Co.; George A. Fink Co.; Shuttleworth, Holly Co.; W. E. Shuttleworth & Co.; Shuttleworth, Dumouchel Co.; Shuttleworth Wollny Co.; Gallen Paper Co.; and Shuttleworth, Hogg & Mather, Inc., forwarded such statements, together with remittances of the

amounts of tax computed upon their several statements as set forth in the following table:

|  | Amount |
|---|---|
| Congress Warehouse & Forwarding Co | $20,229.20 |
| George A. Fink Co | 1,466.01 |
| Shuttleworth, Holly Co | 3,048.93 |
| W. E. Shuttleworth & Co | 274.50 |
| Shuttleworth, Dumouchel Co | |
| Shuttleworth, Wollny Co | 2,115.11 |
| Gallen Paper Co | 565.00 |
| Shuttleworth, Hogg & Mather, Inc | 20,272.96 |

By reason of losses incurred by the Shuttleworth Co. in the calendar year 1920, the amount of income and profits tax due by it a the companies consolidated with it on the above-mentioned return was $27,135.52, which said company duly paid to the collector for the second district of New York.

Thereafter, and on July 24, 1922, the Shuttleworth Co. was adjudicated a bankrupt, and on August 11, 1922, subject to the approval of the court, which was given on or about October 18, 1922, all of the remaining assets of the said bankrupt were sold to W. E. Shuttleworth, the president of the Shuttleworth Co., and the said sale included " Claims against the United States of America and the State of New York for refund of taxes improperly paid."

Thereafter, and on May 23, 1923, the Commissioner addressed a communication to the Shuttleworth Co. reading as follows:

IT : SA : CR : E.
CEL–Af.

MAY 23, 1923.

SHUTTLEWORTH, KEILLER AND COMPANY,
        *220 West Broadway, New York, N. Y.*

SIRS : Reference is made to an executed Affiliated Corporations Questionnaire for the taxable year 1919 filed by your corporation, and to other data appearing in the case.

After a reconsideration of all the facts in the case, you are advised that during the taxable year 1919 the companies as grouped below were affiliated within the purview of Section 240 of the Revenue Act of 1918.

GROUP I.

Shuttleworth, Keiller and Company.
W. E. Shuttleworth and Company.
Congress Warehouse and Forwarding Corporation.

GROUP II.

Gallen Paper Company.
Shuttleworth, Hogg and Mather, Incorporated.

A consolidated income and profits tax return should have been filed by each group of companies indicated for that year. In the event that such consolidated returns should be needed in auditing the case, you will be notified by this office.

You are further advised that during the taxable year 1919, the companies listed below were not affiliated with each other or with any other company named herein, within the purview of the authority cited.

Shuttleworth, Holly Company.

Shuttleworth, Dumouchel Company.

Shuttleworth, Wollny Company, Incorporated.

George A. Fink Company.

Kolb Carton Company.

Berlin Veneer Works, Incorporated.

Wm. Spreen and Company, Incorporated.

Each company, therefore, should file a separate income and profits tax return for that year, provided that such action has not been taken.

The ruling outlined herein supersedes that contained in office letter dated November 1, 1920, relative to the affiliation of the companies named herein during the taxable year 1919.

If not in agreement with this ruling, you are granted thirty days from the date of this letter within which to submit an answer setting forth your exceptions.

In the event of further correspondence, reference should be made to IT: SA : CR : E—CEL : Af.

Respectfully,

E. W. CHATTERTON,
*Deputy Commissioner.*

(Signed) By WM. P. BIRD,
*Chief of Subdivision.*

Thereafter, and on November 21, 1923, the Commissioner addressed a communication to the taxpayer asserting a tax against it and the Gallen Paper Co. for the year 1920 as affiliated companies in the amounts, respectively, of $20,231.05 and $1,894.62, of which the deficiency here in question is a part, and in the computation of that deficiency gave no credit whatever for the payments, or any part thereof, theretofore made by the taxpayer and the Gallen Paper Co. to the Shuttleworth Co. and by it paid in part to the collector of the second district of New York as tax due upon the consolidated return.

The Commissioner in office on the date of the affiliation ruling of November 1, 1920, was William M. Williams.

The Commissioner in office on the date of the ruling of May 23, 1923, rescinding the affiliation ruling of November 1, 1920, was David H. Blair.

All of the facts above set forth in respect of affiliation were before Commissioner William M. Williams at the time of the ruling of November 1, 1920, as fully as they were in possession of Commissioner David H. Blair at the time of the rescinding ruling of May 23, 1923.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 15 days' notice, under Rule 50.

OPINION.

JAMES: The first question to be determined in this appeal is whether the taxpayer was properly affiliated with the Shuttleworth Co. for the year 1920. If this point should be decided in favor of the taxpayer, it becomes unnecessary to consider whether the Commissioner in 1923, David H. Blair, could rule differently with respect to affiliation for the year 1920 from the ruling of his predecessor for the year 1919.

It appears from the evidence that the taxpayer was in many respects operating under the direction of the Shuttleworth Co. during 1920; that its officers were in the main selected from that company, and that a majority of its stock was controlled through a voting trust agreement by that company. But it is apparent that independent stockholders of the taxpayer owned and controlled at the beginning of the year 49.9 per cent of its stock and at the end of the year 39.9 per cent, and neither they nor their stock were in any respect under the control of the Shuttleworth Co. We can not hold that 60.1 per cent of the stock of a corporation constitutes substantially all of that stock for purposes of control in the absence of evidence of other factors indicating a control over at least a very considerable portion of the balance of the stock. On the merits, therefore, we are of the opinion that Commissioner Blair was correct in determining that the taxpayer and the Shuttleworth Co. were not affiliated during the year 1920.

We are next to inquire whether Commissioner Blair could lawfully rule in respect of affiliation for the year 1920 in a manner different from the ruling of Commissioner Williams for the year 1919.

This question also divides itself into two parts: (1) Whether the letter of November 1, 1920, which Commissioner Williams sent to the Shuttleworth Co., was, in the light of that letter and the regulations and instructions of the Commissioner, a ruling of affiliation as to the year 1920; and (2) if it was such a ruling, whether Commissioner Blair had authority to reverse it?

Upon the first of the foregoing points we are of the opinion that the ruling contained in the letter of November 1, 1920, was not a ruling in respect of affiliation for that year, but related solely to the years 1917, 1918, and 1919. It so states, and nowhere in its contents can be found any statement with respect to the year 1920. But the taxpayer contends that the instructions of the Commissioner in respect of the filing of affiliated corporations questionnaires and the instructions contained upon the forms provided for income-tax returns indicated that a ruling once made on a question of affiliation continued until reversed, and was, in fact, a ruling for all years until official notice of the reversal was sent by the Commissioner. With

this position we are unable to agree. It is true that the Commissioner, upon the forms provided for returns, asked questions relating to prior filings of consolidated returns, and, if the conditions were unchanged in respect of stockholdings and in other particulars, excused the filing of further information, which, in the nature of things, would consist merely of the filing of cumulative evidence, but this falls far short of holding out the promise or representation that a taxpayer once held affiliated for one year would be held affiliated for all succeeding years, and there is nothing in the instructions or directions upon the returns or elsewhere which contains any such implication. At the most, taxpayers were instructed that, if previous returns had been made in a certain manner, successive returns would continue to be so made until or unless a change was directed. No doubt this resulted, in the taxpayer's case, in contributing to placing it in the unfortunate position in which it finds itself under the present circumstances, but that unfortunate position is no excuse for the misinterpretation of the instructions of the Commissioner or for placing upon those instructions any unwarranted construction.

It being our view that Commissioner Williams made no ruling as to the year 1920, it is unnecessary for us to consider whether, had he done so, Commissioner Blair could have reversed such a ruling.

This brings us to the consideration of the effect of the payments made by the taxpayer to the Shuttleworth Co. and by it to the collector.

It appears from the letter of May 23, 1923, that the Commissioner determined as to the year 1920 two groups of affiliation. In Group I is included the Shuttleworth Co., W. E. Shuttleworth & Co., and Congress Warehouse & Forwarding Co. The Shuttleworth Co. contributed nothing toward the payment of the tax upon its consolidated return for the year 1920. The entire tax was paid by the several associated companies. Of the companies in Group I, W. E. Shuttleworth & Co. contributed $274.50, and the Congress Warehouse & Forwarding Co. $20,229.20, a total of $20,503.70. Of the companies in Group II, Gallen Paper Co. and Shuttleworth, Hogg & Mather, Inc., contributed $565 and $20,272.96, respectively, a total in that group of $20,837.96; and the other companies, George A. Fink Co., Shuttleworth, Holly Co., and Shuttleworth, Wollny Co., contributed $1,466.01, $3,048.93, and $2,115.11, a total of $6,650.05. The total contributed by all companies was $47,971.71. From these contributions the Shuttleworth Co., for and on behalf of all the corporations of the affiliated group, paid the tax of $27,135.52 shown on the consolidated return.

The Commissioner apparently proposes to credit this amount of $27,135.52 to Group I alone, leaving the companies in Group II, and those not affiliated at all, to pay their taxes anew.  By implication it would appear that the companies in Group I, since the loss of the Shuttleworth Co. will be offset against a smaller balance of profits, must show taxes upon their consolidated return of much less than $27,135.52, and that the Commissioner will credit or refund the entire amount of such overplus either to Group I, to the Shuttleworth Co. itself, or to W. E. Shuttleworth & Co.  For such a procedure we find no warrant in the Revenue Act of 1924, and for such an allocation of credit for taxes paid none in the Revenue Act of 1918.

. Section 240 (a) of the Revenue Act of 1918 provides, in part, as follows:

> In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each.

There is nothing in the evidence before us which indicates that the taxpayer corporations participating in the consolidated return for the year 1920 ever agreed to the assumption of the tax by the Shuttleworth Co.   On the contrary, it is clearly in evidence that that tax was paid through the Shuttleworth Co. and that the subsidiaries furnished the funds from which payment was made.  The Commissioner was never advised of any agreement among the companies that he should look to the Shuttleworth Co. solely for the amount of tax and, in the absence of any such agreement, it was his duty to assess the tax among the companies in the proportion shown on the consolidated return of their respective net incomes to the total net income thereon, ignoring, for that purpose, minus quantities.  This, apparently, he did not do, but instead he assessed the entire tax to the Shuttleworth Co., a mere ministerial error on the part of the collector, subject to correction at any time.  In our opinion the assessment against the several companies should be corrected to conform to the above-quoted provision of section 240 (a).

Under the provisions of section 273 of the Revenue Act of 1924 it is the duty of the Commissioner to determine the deficiency upon the basis of the correct amount of tax, less the amount of tax shown by the taxpayer upon his return, with other adjustments not here in issue.  Upon its return, this taxpayer, through the medium of the Shuttleworth Co., indicated an amount of tax shown to be due in the proportion of the net income returned by this taxpayer in the consolidated return to the total net income, exclusive of minus quantities.  This amount the Commissioner has not credited in connection with the computation of the deficiency here in question

It should be credited in the determination of this deficiency. The return of the taxpayer filed as a part of the above consolidated return is in evidence and the proper computation can be made therefrom. The deficiency determined by the Commissioner will be corrected in the manner above set forth, and, as so corrected, will be settled as set forth in the decision.