## HART GLASS MFG. CO. v. UNITED STATES.

### No. H–528.

Court of Claims.
April 6, 1931.

Frank C. Olive, of Indianapolis, Ind., for plaintiff.

Ralph C. Williamson, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (Charles P. Sisson, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, and GREEN, Judges.

WILLIAMS, Judge.

This is a suit to recover the sum of $11,500.63, with interest thereon, which the plaintiff alleges is due it as an overpayment of its income and profit taxes for the year 1918.

The plaintiff, the Hart Glass Manufacturing Company, and the T. F. Hart Paper Company, are each corporations doing business under and by virtue of the laws of the state of Indiana.

The two companies filed separate income tax returns for the year 1918, and paid the taxes assessed against them on such returns by separate checks drawn on their respective banks.

On December 27, 1921, the plaintiff and the paper company made application to have their tax liability for the years 1918 and 1921 computed on the basis of affiliated corporations. The Commissioner of Internal Revenue, on February 8, 1922, ruled they were affiliated corporations for the year 1918 within the purview of the Revenue Act of 1918. The T. F. Hart Paper Company was used as the principal company.

An application was made to the Commissioner of Internal Revenue by the plaintiff and the T. F. Hart Paper Company, on November 7, 1923, that the taxes of the said companies be computed under sections 327–328 of the Revenue Act of 1918 (40 Stat. 1093).

The Commissioner of Internal Revenue on February 11, 1924, made an additional assessment against the plaintiff in the amount

of $45,901.03, and an additional assessment against the T. F. Hart Paper Company in the amount of $19,047.98. These additional assessments were made on the basis of the affiliation of the two companies, but not under the special assessment provisions of sections 327–328 of the Revenue Act of 1918. Both the plaintiff and the paper company, in apt time, filed their claims for the abatement of the additional assessments made against them respectively.

On November 6, 1926, the Commissioner of Internal Revenue made final adjustment of the assessment of taxes made against the plaintiff and the T. F. Hart Paper Company as affiliated corporations for the year 1918. The adjustment of assessments was made under the provisions of sections 327–328 of the Revenue Act of 1918, and, as outlined in bureau letter dated December 27, 1926, was as follows:

Hart Glass Manufacturing Company....... $ 6,539 46
T. F. Hart Paper Company................. 36,202 13

The Commissioner's letter of December 27, 1926, explaining the basis on which the final adjustment of the taxes of plaintiff and the T. F. Hart Paper Company for 1918 was made, shows an overassessment against each of the companies for the year, which overassessments to the extent not paid were abated by the Commissioner. It further shows an overpayment in the sum of $12,-930.94 by the plaintiff of its taxes, and a balance due from the T. F. Hart Paper Company on its taxes for the year in the amount of $17,300.17.

The Commissioner applied $1,430.31 of the amount of the plaintiff's overpayment of its taxes against an unpaid assessment of taxes against plaintiff for the year 1920, and the balance, $11,500.63, was credited by the Commissioner, without the consent of the plaintiff, against taxes due from the T. F. Hart Paper Company for the year 1918, which amount the plaintiff seeks to recover in this suit.

The first question presented is whether the Commissioner could legally apply an overpayment of the plaintiff's taxes for the year 1918 to the payment of taxes due from the T. F. Hart Paper Company for the said year on the ground that they were affiliated companies.

Section 240 of the Revenue Act of 1918 (40 Stat. 1081), provides:

"In any case in which a tax is assessed upon the basis of a consolidated return, the total tax shall be computed in the first instance as a unit and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each."

There was no agreement between the plaintiff and the T. F. Hart Paper Company as to the proportions in which the taxes due under the consolidated net income should be assessed against each of them, respectively, and there was no agreement between them which obligated the plaintiff to pay or assume any of the tax liability of the T. F. Hart Paper Company for the year 1918.

The Commissioner of Internal Revenue in his determination of the tax liability of the plaintiff and the paper company, as affiliated corporations for the year 1918, on both February 11, 1924, when the additional assessment against the two corporations was made, and on November 6, 1926, when final adjustment of such assessments was made, in which it was determined there was an overassessment against each company, acted in strict compliance with the statute. In each instance he first computed the total tax liability of the two companies as a unit, and then apportioned the tax between them on the basis of the net income properly assignable to each. In the absence of an agreement between plaintiff and the T. F. Hart Paper Company that their taxes as affiliated corporations should be otherwise apportioned, the Commissioner was bound by the plain provisions of the statute to assess the tax against them in the proportion of their respective net incomes to the total net consolidated income as shown by the return. Swift & Co. v. United States, 69 Ct. Cl. 171.

The Board of Tax Appeals has consistently held, and we think rightly so, that for the purpose of assessment and collection of taxes the separate identity of each corporation in an affiliated group is recognized.

In American Creosoting Company v. Commissioner, 12 B. T. A. 247, the board said:

"A corporation affiliated with another corporation under section 240 of the Revenue Act of 1918 does not lose its status as a 'taxpayer' and an assessment against such corporation in the absence of an agreement that the taxes due from other affiliated corporations may be collected from it will not authorize the collection from it of taxes due from such other corporations, and a notice to it of a deficiency in taxes due from other affiliated corporations joining with it in filing a consolidated return will not authorize

442

the filing with the board of petitions for the redetermination of deficiencies by other affiliated corporations."

Nelson T. Hartson, Solicitor of Internal Revenue, in L. O. 1113—C. B. III—2—36, said in regard to section 240 of the Revenue Act of 1918:

"This section, however, does not make of the affiliate group a single taxable entity so far as the payment of the tax is concerned; it provides that where the tax is assessed on the basis of a consolidated return, it shall be computed in the first instance as a unit, and shall then be assessed upon the respective affiliated corporations in such proportions as may be agreed upon among them, or, in the absence of any such agreement, then on the basis of the net income properly assignable to each. The act does not provide that the affiliate group is a single 'taxpayer'; on the contrary, since each member of the affiliated group is a taxpayer, subject to the tax imposed by the act, it is a 'taxpayer' within the meaning of the term as defined in section 1."

█ The statute authorizes an overpayment to be credited "against any income, war-profits, or excess-profits tax or installment thereof then due from the *taxpayer*." (Italics ours.) This language does not authorize such overpayment to be credited against taxes due from any taxpayer other than the one making the overpayment. The taxpayer making the overpayment in this case was the plaintiff. The commissioner applied such overpayment to the payment of taxes due from another taxpayer. His action in that respect was erroneous.

The next question to be considered is the plaintiff's right, in this suit, to recover the amount of the overpayment of its 1918 taxes which was wrongfully credited by the commissioner against taxes due from the T. F. Hart Paper Company.

█ The defendant contends plaintiff's right to maintain its suit is barred by the statute of limitations, because of its failure to file a sufficient claim for refund within the time required by law.

Compliance with the statutory requirement with reference to the filing of claims for a refund of taxes is a condition precedent to the right of a taxpayer to maintain a suit for the recovery of such taxes. Feather River Lumber Co. v. United States, 66 Ct. Cl. 54; Hazel M. Davis v. United States, 67 Ct. Cl. 643; Swift & Co. v. United States, 68 Ct. Cl. 97; Kings County Savings Institution v. Blair, 116 U. S. 200, 6 S. Ct. 353, 29 L. Ed. 657; Rock Island Railroad Company v. United States, 254 U. S. 141, 41 S. Ct. 55, 65 L. Ed. 188.

The Revenue Act of 1924, § 281 (26 USCA § 1065 note), provides:

"(b) Except as provided in subdivisions (c) and (e) of this section, (1) no such credit or refund shall be allowed or made after four years from the time the tax was paid, unless before the expiration of such four years a claim therefor is filed by the taxpayer. * * *

"(e) If the taxpayer has, within five years from the time the return for the taxable year 1917 was due, filed a waiver of his right to have the taxes due for such taxable year determined and assessed within five years after the return was filed, or if he has, on or before June 15, 1924, filed such a waiver in respect of the taxes due for the taxable year 1918, then such credit or refund relating to the taxes for the year in respect of which the waiver was filed shall be allowed or made if claim therefor is filed either on or before April 1, 1925, or within four years from the time the tax was paid.

"(f) This section shall not (1) bar from allowance a claim for credit or refund filed prior to the enactment of this Act which but for such enactment would have been allowable. * *. * "

The Revenue Act of 1926, § 284 (26 USCA § 1065) provides:

"(g) If the taxpayer has, within five years from the time the return for the taxable year 1917 was due, filed a waiver of his right to have the taxes due for such taxable year determined and assessed within five years after the return was filed, or if he has, on or before June 15, 1924, filed such a waiver in respect of the taxes due for the taxable year 1918, then such credit or refund relating to the taxes for the year in respect of which the waiver was filed shall be allowed or made if claim therefor is filed either on or before April 1, 1925, or within four years from the time the tax was paid. * * *

"(h) Except as provided in subdivision (d) this section shall not (1) bar from allowance a claim for credit or refund filed prior to the enactment of this Act which but for such enactment would have been allowable. * . * * "

Section 1113. (a) Section 3226 of the Revised Statutes (26 USCA § 156), as amended, is re-enacted without change, as follows:

"Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. * * * "

The plaintiff filed three claims for a refund in respect to its 1918 taxes, as follows:

(1) On March 15, 1920, a claim for the refund of $4,149.02, which claim was rejected by the Commissioner on February 11, 1924.

(2) On March 11, 1924, a claim for refund in the amount of $10,000. The claim stated no ground for a refund other than that it was filed to protect the plaintiff's rights against the running of the statute of limitations. It was rejected by the Commissioner on May 21, 1924.

■ Neither of these rejected claims was, after its rejection, reopened or reconsidered by the Commissioner, nor were they amended, or sought to be amended, by the filing of any subsequent claim. This suit was begun December 22, 1927, more than five years after the payment of the taxes sought to be recovered, and also more than two years after the rejection of the said claims by the Commissioner, and is barred by the statute of limitations, in so far as such claims are concerned.

The plaintiff, however, does not rely upon the aforesaid rejected claims for refund as a basis of its suit, but relies upon (3) the joint claim for refund filed by it and the T. F. Hart Paper Company on December 17, 1926. This claim asks for a refund of $20,-000, and reads as follows:

"This claim for refund is filed to protect the rights of the tax-payers under the statute of limitations and is based upon an application for special assessment under sections 327–328, revenue act of 1918, filed with the Commissioner of Internal Revenue in the taxpayers' brief on May 1, 1924. The case is now pending in the special assessment section. Waivers on file for 1918 expire December 31, 1926. The amount shown on line 6 is estimated and subject to change upon final determination of the tax liability."

The plaintiff contends this claim is valid, and, by virtue of the waiver filed on October 28, 1925, extending the time in which assessment of the plaintiff's 1918 taxes might be made until December 31, 1926, was filed within the time prescribed by law.

The waiver in question was filed subsequent to the time fixed in the Revenue Acts of 1924 and 1926 in which the filing of a waiver would operate to extend the time for filing claims for refund. Furthermore, the claim for refund relied upon was filed more than a year after the period had elapsed in which such claim was required to be filed.

■ By virtue of section 278 (c) of the Revenue Acts of 1924 and 1926 (26 USCA § 1060), the waiver herein, although filed after the limitations had run against the assessment of taxes against the plaintiff for the year 1918, revived in the Commissioner authority to make an assessment within the period covered by the waiver. Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. ——. Such waiver, however, filed after the date prescribed in section 281 (e) of the Revenue Act of 1924 and section 284 (g) of the Revenue Act of 1926, did not operate to extend the time in which claim for refund could be filed under the provisions of said sections.

In Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 139, 75 L. Ed. ——, the court said:

"Attention is also called to section 281 (e) of the 1924 act, which extended the time for making claims for refund where a waiver of assessment had been filed prior to certain specified dates, and it is said that section 278 (c), as interpreted, would, when read with section 281 (e), result in a discrimination against those taxpayers who had signed a waiver after the statute had run. The argument is that such taxpayers would still be liable for the tax, but that no corresponding extension of the limitation on claims for refund would be given. The dates specified in section 281 (e), however, do not

coincide with the periods of limitation on assessment and collection. The purpose of that section was merely to extend the time for filing claims for refund in particular cases of taxes for the years 1917–1919. There is no necessary relation between it and section 278 (c)."

Neither waiver nor claim for refund was filed within the time required by law, and the plaintiff's right to bring suit to recover the amount of the overpayment of its taxes for the year 1918 was barred by the statute of limitations when the petition herein was filed, December 23, 1927. The Commissioner had no legal authority to allow the refund, and no right to interest on the overpayment ever attached.

Plaintiff's petition is therefore dismissed. It is so ordered.

BOOTH, Chief Justice, and LITTLETON and GREEN, Judges, concur.

WHALEY, Judge, did not hear this case and took no part in its decision.